## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DUSTIN J. MERRYFIELD,

        Plaintiff,

v.

LAURA HOWARD, et al.,

        Defendants.

Case No. 21-3255-DDC-KGG

## MEMORANDUM AND ORDER

Pro se plaintiff Dustin Merryfield[1] is confined involuntarily under the Kansas Sexually Violent Predator Act on the campus of the Larned State Hospital in Larned, Kansas. He brings this lawsuit against Laura Howard (Secretary of the Kansas Department of Aging and Disability Services) and several other individuals who are employed by the Kansas Sexual Predator Treatment Program. Plaintiff asserts claims under 42 U.S.C. § 1983, alleging various constitutional violations arising from his confinement conditions.

Defendants have filed a Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c) (Doc. 23). It seeks judgment against all of plaintiff's claims. Plaintiff has filed a Response opposing defendants' motion (Doc. 25). And defendants have filed a Reply (Doc. 30). For reasons explained below, the court grants defendants' Motion for Judgment on the Pleadings (Doc. 23).

---

[1]    Because plaintiff proceeds pro se, the court construes his filings liberally and holds them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).

## I.      Factual Background

The following facts come from plaintiff's Complaint (Doc. 1).  The court accepts them as true and views them in the light most favorable to plaintiff.  *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000) (explaining that on a motion for judgment on the pleadings under Rule 12(c) the court "accept[s] the well-pleaded allegations of the complaint as true and construe[s] them in the light most favorable to the non-moving party" (citations and internal quotation marks omitted)).

### *Plaintiff's Confinement Under the Kansas Sexually Violent Predator Act*

Since 2000, the State of Kansas has confined plaintiff involuntarily under the Kansas Sexually Violent Predator Act (KSVPA), Kan. Stat. Ann. §§ 59-29a01–59-29a27.  Doc. 1 at 3 (Compl. ¶ C.1.C.2.A.1.).  On June 5, 2018, plaintiff transferred from Larned State Hospital to a unit on the Parsons State Hospital campus.  *Id.* (Compl. ¶ C.1.C.2.A.2.).  On August 18, 2019, plaintiff returned to Larned State Hospital from Parsons State Hospital.  *Id.* at 4 (Compl. ¶ C.1.C.2.A.3.).

When plaintiff returned to Larned State Hospital, he alleges that he was unable to retain some of his property.  *Id.* (Compl. ¶ C.1.C.2.A.5.).  Specifically, plaintiff alleges that he was not allowed to retain the following pieces of property:  a laser copier (*id.* at 13 (Compl. ¶ C.1.C.2.I.1.)); two hot pots (*id.* (Compl. ¶ C.1.C.2.I.2.)); a Blu-Ray player (*id.* at 14 (Compl. ¶ C.1.C.2.I.3.)); a small plastic trash can (*id.* (Compl. ¶ C.1.C.2.I.4.)); a staple puller (*id.* (Compl. ¶ C.1.C.2.I.5.)); a battery backup (*id.* at 15 (Compl. ¶ C.1.C.2.I.6.)); a plastic wall clock (*id.* (Compl. ¶ C.1.C.2.I.7.)); a typewriter (*id.* (Compl. ¶ C.1.C.2.I.8.)); a humidifier (*id.* at 16 (Compl. ¶ C.1.C.2.I.9.)); a postal scale (*id.* (Compl. ¶ C.1.C.2.I.10.)); and a lunch box (*id.* (Compl. ¶ C.1.C.2.I.11.)).

*Plaintiff's Requests for Administrative Relief*

Plaintiff sought administrative relief based on the facility's refusal to return certain property to him.  *See id.* at 20 (Compl. ¶ C.1.C.2.J.2.); *see also id.* at 23 (Compl. ¶ D.2.) ("As shown in the facts of this Complaint I did seek administrative relief.").

On September 7, 2020, plaintiff submitted requests for administrative hearings with the Office of Administrative Hearing ("OAH") about the staff's refusal to return:  (1) the two hot pots; (2) the Blu-Ray player; and (3) the copier.  *See* Doc. 22 at 6 (Parties Stipulation of Agreed Facts ¶ 53).[2]  The OAH case number assigned to the case for the hot pots was 21MP0002 HAB. *Id.* (Parties Stipulation of Agreed Facts ¶ 54).  The case number assigned to the case for the Blu-Ray player was 21MP0004 HAB.  *Id.* at 7 (Parties Stipulation of Agreed Facts ¶ 55).  The case number assigned to the case for the copier was 21MP0005 HAB.  *Id.* (Parties Stipulation of Agreed Facts ¶ 56).

---

[2]        Defendants correctly assert that the court may take judicial notice of public records pertaining to plaintiff's administrative complaints, on a motion for judgment on the pleadings, but can't accept the allegations asserted in them as true.  Doc. 24 at 3 n.1 (citing *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (further citations omitted)); *see also Tal*, 453 F.3d at 1264 n.24 ("[F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment. This allows the court to take judicial notice of its own files and records, as well as facts which are a matter of public record.  However, the documents may only be considered to show their contents, not to prove the truth of matters asserted therein." (citations and internal quotation marks omitted)).

Also, on a Rule 12(b)(6) motion to dismiss, "courts may consider not only the complaint itself, but also attached exhibits, and documents incorporated into the complaint by reference . . . if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citation and internal quotation marks omitted).  Here, plaintiff's Complaint refers to his administrative complaints.  And plaintiff never disputes the authenticity of the administrative case numbers that defendants provide in their Motion for Judgment on the Pleadings.  To the contrary, plaintiff has stipulated to these facts in the "Parties Stipulation of Agreed Facts."  *See* Doc. 22 at 12 (signature page bearing plaintiff's signature); *see also* Doc. 25-1 at 1 (asserting that plaintiff relies on the facts "set forth in Document 1 [plaintiff's Complaint] and in Document 22 [Parties Stipulation of Agreed Facts]").  So, the court considers these facts about plaintiff's administrative complaints on this Motion for Judgment on the Pleadings without converting the motion to one for summary judgment.

For case number 21MP0002 HAB, OAH reversed the Hearing Officer's decision and ordered staff to return the hot pots to plaintiff. *Id.* (Parties Stipulation of Agreed Facts ¶ 57). For case number 21MP0004 HAB, the matter was resolved without a decision by OAH. *Id.* (Parties Stipulation of Agreed Facts ¶ 58).

For case number 21MP0005 HAB, OAH granted KDADS's motion to dismiss for failure to state a claim upon which relief can be granted on August 19, 2021. *Id.* (Parties Stipulation of Agreed Facts ¶ 59). On October 12, 2021, plaintiff appealed the OAH decision in case number 21MP0005 HAB to Pawnee County District Court in Case No. 21-CV-000028. *Id.* (Parties Stipulation of Agreed Facts ¶ 60). This case presently is ongoing. *Id.* (Parties Stipulation of Agreed Facts ¶ 61).

### *Plaintiff's Requests to Staff*

Between November 3, 2019, and July 26, 2020, plaintiff submitted several resident requests asking to purchase various items from vendors. Doc. 1 at 17–18 (Compl. ¶¶ C.1.C.2.I.13.–20.). Larned State Hospital staff denied all or part of plaintiff's requests to purchase these items. *Id.*

On February 23 and 24, 2021, staff determined that certain pieces of mail addressed to plaintiff were "questionable" and sent the mail to plaintiff's therapist. *Id.* at 18–19 (Compl. ¶¶ C.1.C.2.I.22.–23.). Several days later, plaintiff spoke with his therapist who reported that she never received the mail. *Id.* Plaintiff alleges that, to date, the facility can't locate the mail. *Id.*

On March 8, 2021, plaintiff submitted a request to place an ad on loveaprisoner.com. *Id.* at 18 (Compl. ¶ C.1.C.2.I.21.); *see also* Doc. 24-1 (plaintiff's request).[3] The following day,

---

[3]      The court can consider plaintiff's request—attached as an exhibit to defendant's motion (Doc. 24-1)—because plaintiff's Complaint incorporates the request by reference, the request is central to plaintiff's claims, and plaintiff doesn't dispute the authenticity of his request. *See Smith*, 561 F.3d at 1098.

Larned State Hospital staff denied plaintiff's request.  Doc. 24-1 at 1 (explaining in a handwritten note made on plaintiff's request that "leadership reviewed his proposal" and the request "is denied at this time").

### *Larned State Hospital Policies*

Defendants have attached three Sexual Predator Treatment Program (SPTP) Policies as exhibits to their motion.  *See* Docs. 24-2, 24-3, 24-4.[4]  SPTP Policy 5.2 defines the rules and expectations for resident property.  *See generally* Doc. 24-2.  It includes a procedure for residents to submit property requests.  *See id*.  SPTP Policy 8.3 establishes guidelines and procedures governing resident mail at the facility.  *See generally* Doc. 24-3.  SPTP Policy 8.6 defines the procedures governing denial or restriction of a resident's right.  *See generally* Doc. 24-4.

### II.     Legal Standard

A court evaluates a Rule 12(c) motion under the same standard that governs a Rule 12(b)(6) motion to dismiss.  *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000).  For a complaint to survive a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

---

[4]      The court can consider these policies when deciding this motion because plaintiff's Complaint incorporates the policies by reference.  *See* Doc. 1 at 6 (Compl. ¶ C.1.C.2.C.4.) (referring to SPTP Policy 5.2); *see also id.* at 8 (Compl. ¶¶ C.1.C.2.D.5., C.1.C.2.F.1.) (discussing SPTP Policy 8.3); *id.* at 9–13 (Compl ¶ C.1.C.2.H.) (describing SPTP Policy 8.6).  Also, the policies are central to plaintiff's claims, and plaintiff doesn't dispute the authenticity of the policies defendant has submitted as exhibits.  Thus, the court can consider the policies on this Motion for Judgment on the Pleadings without turning the motion into one for summary judgment.  *See Smith*, 561 F.3d at 1098.

When considering a Rule 12(b)(6) motion for judgment on the pleadings, the court must assume that the factual allegations in the complaint are true, but it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555); *see also Atl. Richfield*, 226 F.3d at 1160 (explaining that, on a Rule 12(c) motion, the court must "accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the non-moving party" (citation and internal quotation marks omitted)). And while this pleading standard doesn't require "'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[,]'" which, as the Supreme Court explained, "'will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## III.    Analysis

Defendants move for judgment on the pleadings against all of plaintiff's § 1983 claims.[5] Defendants assert at least eight arguments supporting their motion. The court addresses all eight of these arguments, in turn, below.

### A.  Claims Asserted Against Defendant Laura Howard

Defendants argue plaintiff's § 1983 claims against defendant Laura Howard fail because (i) she is immune from suit under the Eleventh Amendment for claims asserted against her in her

---

[5]        Before addressing defendants' dispositive arguments for judgment on the pleadings, the court notes that plaintiff "as a civil committee under the Kansas Sexually Violent Predator[ ] Act (KSVPA), is in a different position than a prisoner or a person who is civilly committed, albeit involuntarily, merely for mental health issues." *Chubb v Keck*, No. 17-3220-SAC, 2020 WL 5653263, at *3 (D. Kan. Sept. 23, 2020). Plaintiff "has been found to be a sexually violent predator (SVP) from whom society needs to be protected." *Id.* As our court has recognized, "SVPs 'must be afforded more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish[,]'" however, "'SVPs have been civilly committed subsequent to criminal convictions and have been adjudged to pose a danger to the health and safety of others.'" *Id.* (quoting *Hydrick v. Hunter*, 500 F.3d 978, 989–90 (9th Cir. 2007)). "As a result, 'the rights of SVPs may not necessarily be coextensive with those of all other civilly detained persons.'" *Id.* (quoting *Hydrick*, 500 F.3d at 989–90).

official capacity, and (ii) the Complaint alleges no personal participation by her capable of supporting a plausible claim made against her in her individual capacity.

To the extent plaintiff asserts his § 1983 claims against defendant Howard in her *official* capacity, the Eleventh Amendment bars suits seeking to recover money damages from state actors acting in their official capacities.  *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997) ("It has long been settled that the [Eleventh Amendment's] reference to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." (citations omitted)).  However, the immunity conferred by the Eleventh Amendment "is not absolute."  *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (citation omitted).  As our Circuit has explained, three exceptions exist to Eleventh Amendment immunity:

> First, a state may consent to suit in federal court.  Second, Congress may abrogate a state's sovereign immunity by appropriate legislation when it acts under Section 5 of the Fourteenth Amendment.  Finally, under *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief.

*Id.* (citations omitted).

The first and second exceptions don't apply here.  First, Kansas hasn't waived its immunity.  *Jones v. Courtney*, 466 F. App'x 696, 700 (10th Cir. 2012) (explaining that while "Kansas has consented to suit for damages under the Kansas Tort Claims Act[,]" it has not waived Eleventh Amendment immunity because the statute expressly disclaims a waiver (citing Kan. Stat. Ann. § 75-6116(g) (further citations and internal quotation marks omitted))).  Second, Congress didn't abrogate state sovereign immunity when it enacted 42 U.S.C. § 1983.  *Ellis v.*

*Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1196 (10th Cir. 1998) (citing *Quern v. Jordan*, 440 U.S. 332, 338–40 (1979)).

So, plaintiff hangs his § 1983 hat on the third exception.  *See* Doc. 25-1 at 2–4.  The Supreme Court's *Ex parte Young* decision "held that the Eleventh Amendment generally will not operate to bar suits so long as they (i) seek only declaratory and injunctive relief rather than monetary damages for alleged violations of federal law, and (ii) are aimed against state officers acting in their official capacities, rather than against the State itself."  *Hill v. Kemp*, 478 F.3d 1236, 1255–56 (10th Cir. 2007).  Here, plaintiff's claims against defendant Howard in her official capacity satisfy the *Ex parte Young* criteria to the extent:  (1) plaintiff's claims allege violations of federal law—*i.e.*, in the form of depriving plaintiff of his constitutional rights by refusing to return certain property to him, denying his requests to purchase certain items, denying his request for a pen pal, and preventing him from accessing his mail, *see, e.g.*, Doc. 1 at 24 (Compl. ¶¶ E.1.A.–D.) (alleging violations of the First and Fourteenth Amendments); and (2) plaintiff asserts prospective injunctive or declaratory relief in the form of an order finding that Larned State Hospital staff have violated plaintiff's constitutional rights and requiring that defendant Howard "immediately restore[ ]" plaintiff's constitutional rights, *id.* at 24–25 (Compl. ¶ E.1.E.).  The court agrees that those claims fall within the *Ex parte Young* exception to Eleventh Amendment immunity.  Thus, Eleventh Amendment immunity doesn't bar plaintiff's claims asserted against defendant Howard in her official capacity based on alleged violations of federal law for which plaintiff seeks prospective injunctive relief.  But, to the extent one could construe plaintiff's claims as ones seeking money damages from defendant Howard—as a state official sued in her official capacity—the Eleventh Amendment bars those claims.  *Ellis*, 163 F.3d at 1196.

Next, and to the extent plaintiff asserts his § 1983 claims against defendant Howard in her *individual* capacity, plaintiff alleges no "affirmative link" between defendant Howard and the alleged constitutional violations as is required to make her liable for the alleged constitutional violations committed by her subordinates. *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010) (citations omitted). The "affirmative link" requirement has "three related prongs: (1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind." *Id.* Here, plaintiff's individual capacity theory breaks down on the first prong. His Complaint never alleges any personal participation by defendant Howard in the alleged constitutional violations. This threshold failing negates any need to consider the second or third prongs. Because without "personal involvement" allegations, whether plaintiff can demonstrate a "casual connection" and "state of mind" doesn't matter. Plaintiff thus fails to state a plausible § 1983 claim against defendant Howard in her individual capacity.

In sum, plaintiff fails to state a § 1983 claim against defendant Howard in her official capacity for any claims seeking money damages. In contrast, and to the extent plaintiff seeks prospective injunctive or declaratory relief for alleged constitutional violations, Eleventh Amendment immunity doesn't bar those claims against defendant Howard in her official capacity. But plaintiff fails to state a § 1983 claim against defendant Howard in her individual capacity because she never satisfies the affirmative link requirement.

### B. *Rooker-Feldman* Doctrine

Defendants next argue that the *Rooker-Feldman* doctrine bars some of plaintiff's claims because he already has prosecuted specified claims in Kansas state court and those claims are inextricably intertwined with an earlier state court judgment. "The *Rooker-Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court

losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).  The doctrine applies "where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." *Id.* at 466.  To allow otherwise would contravene 28 U.S.C. § 1257, which confers jurisdiction only on the Supreme Court to hear appeals from final state-court judgments. *Id.* at 463.  The *Rooker-Feldman* doctrine thus precludes federal district and circuit courts "from exercising appellate jurisdiction over final state-court judgments." *Id.*  The *Rooker-Feldman* doctrine also bars district courts from exercising jurisdiction over claims that are "'inextricably intertwined' with the state court's judgment." *Mann v. Boatright*, 477 F.3d 1140, 1147 (10th Cir. 2007) (quoting *Exxon-Mobil*, 544 U.S. at 286 n.1).

Here, defendants argue that the *Rooker-Feldman* doctrine bars plaintiff's claims based on the facility's failure to return the copier, Blu-Ray player, and hot pots because plaintiff sought state law administrative relief for these claims. *See* Doc. 22 at 6 (Parties Stipulation of Agreed Facts ¶ 53) (stipulating that plaintiff submitted requests with the OAH about staff's refusal to return:  (1) the hot pots; (2) the Blu-Ray player; and (3) the copier).  For plaintiff's complaint about the two hot pots, the parties agree:  OAH reversed the Hearing Officer's decision and ordered staff to return the hot pots to plaintiff. *Id.* at 7 (Parties Stipulation of Agreed Facts ¶ 57). For plaintiff's complaint about the Blu-Ray player, the parties again agree.  That matter was resolved without a decision by OAH. *Id.* (Parties Stipulation of Agreed Facts ¶ 58).  And for plaintiff's complaint about the copier, the parties agree that OAH granted KDADS's motion to dismiss for failure to state a claim upon which relief can be granted. *Id.* (Parties Stipulation of

Agreed Facts ¶¶ 59–61).  Plaintiff then appealed the OAH decision to Pawnee County District Court in Case No. 21-CV-000028, and that case still presently is ongoing.  *Id.*

None of plaintiff's administrative complaints involve a state court judgment.  Instead, defendants rely on the administrative proceedings only for plaintiff's complaints about the hot pots and the Blu-Ray player.  But defendants don't cite any case law applying the *Rooker-Feldman* doctrine to state administrative decisions.  Instead, the controlling legal standard for the *Rooker-Feldman* doctrine only prohibits federal courts from "from exercising appellate jurisdiction over *final state-court judgments.*"  *Lance*, 546 U.S. at 463 (emphasis added); *see also Woodard v. Jefferson Cnty.*, 18 F. App'x 706, 717 (10th Cir. 2001) (holding that the *Rooker-Feldman* doctrine didn't apply because no "'judgment' [was] rendered by a statutorily authorized administrative tribunal" and "the *Rooker-Feldman* doctrine applies only to judicial proceedings" (citing *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 476 (1983)); *Sanders ex rel. Rayl v. Kan. Dep't of Soc. & Rehab. Servs.*, 317 F. Supp. 2d 1233, 1240 (D. Kan. 2004) (explaining that "the *Rooker-Feldman* doctrine does not apply to decisions of administrative agencies" and instead "'applies only to judicial proceedings'" (quoting *Woodard*, 18 F. App'x at 717)).

Also, defendants concede, plaintiff appealed his complaint about the copier to the Pawnee County District Court and that case still is ongoing.  As our Circuit has explained, the *Rooker-Feldman* doctrine has a "narrow scope" and applies only "if suit 'was filed before the end of the state courts' appeal process.'"  *Chapman v. Oklahoma*, 472 F.3d 747, 749 (10th Cir. 2006) (quoting *Guttman v. Khalsa*, 446 F.3d 1027, 1029, 1031–32 (10th Cir. 2006)).  Because plaintiff's factual allegations suggest that the state court proceeding about the copier still is ongoing and no state court has issued a final judgment yet, the *Rooker-Feldman* doctrine does not apply.

For all these reasons, the court declines to apply the *Rooker-Feldman* doctrine here.[6]

## C.  Statute of Limitations

Defendants next argue that the statute of limitations bars plaintiff's § 1983 claims based on (1) an alleged failure to return plaintiff's property to him when he transferred to the Larned State Hospital on August 18, 2019 (Doc. 1 at 13–16 (Compl. ¶¶ C.1.C.2.I.1.–11.)); and (2) an alleged restriction on plaintiff's mail imposed on October 29, 2019 (Doc. 1 at 17 (Compl. ¶ C.1.C.2.I.12.)).  The statute of limitations for § 1983 claims "is drawn from the personal-injury statute of the state in which the federal district court sits."  *Mondragón v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008) (citation omitted).  In Kansas, the statute of limitations for personal injury claims is two years.  Kan. Stat. Ann. § 60-513(a)(4); *see also Eden v. Webb*, No. 22-3064, 2022 WL 17576354, at *1 (10th Cir. Dec. 12, 2022); *Eikenberry v. Seward Cnty., Kan.*, 734 F. App'x 572, 575 (10th Cir. 2018).  So, honoring controlling precedent, the court applies Kansas's two-year statute of limitations to plaintiff's § 1983 claims.

Here, plaintiff alleges constitutional violations based on the August 18, 2019 failure to return his property and the October 29, 2019 restriction on plaintiff's mail.  Both of these alleged constitutional violations occurred more than two years before plaintiff filed this suit on November 1, 2021.  *See* Doc. 1 (Compl.) (filed Nov. 1, 2021).  Thus, the statute of limitations bars the claims.

Plaintiff's Opposition to defendants' motion tried to avoid this result, arguing that the statute of limitations doesn't bar these claims because the alleged constitutional violations have "not been remedied[,]" and thus, they are "still a violation of [plaintiff's] rights that [are]

---

[6]        The court recognizes that other abstention doctrines might apply to plaintiff's claims here.  But defendants never invoke any of them other than *Rooker-Feldman*.  The court declines to make arguments for defendants.  And thus, the court doesn't consider whether other abstention doctrines might apply to the alleged facts here.

occurring today." Doc. 25-1 at 5, 9. To the extent plaintiff is asserting an "ongoing" violation of his constitutional rights, those allegations don't save his time-barred § 1983 claims. Federal law—not state law—"determines the date on which the claim accrues and the limitations period starts to run." *Mondragón*, 519 F.3d at 1082 (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). Generally, a § 1983 claim "accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action, or when the plaintiff's right to resort to federal court was perfected." *Herrera v. City of Espanola*, 32 F.4th 980, 990 (10th Cir. 2022) (citations and internal quotation marks omitted). And although our Circuit has held that "a § 1983 litigant may rely on the continuing violation doctrine to overcome the statute of limitations where the first in a series of acts giving rise to a single violation occurs outside of the limitations period, the doctrine does not save" a plaintiff's claims when they "are not premised on a series of actions amounting to a single violation of their rights." *Id.* at 997.

In *Herrera*, plaintiffs argued that the statute of limitations didn't bar their § 1983 claims based on the defendant City's termination of their water service because, they argued, the City had committed a separate constitutional violation each time it denied one of plaintiffs' requests to restore their water service. *Id.* The Circuit disagreed. *Id.* It held that the City's "initial termination of service was a discrete act capable of giving rise to [plaintiffs'] claims" and "no additional act or cumulative effect of acts was needed to give rise to the claims . . . because the initial termination of service provided a basis for of all the elements of their claims." *Id.* at 998. Also, the Circuit recognized that refusing to apply the continuing violation to those facts "makes perfect sense because any other rule would, in practical effect, mean that the . . . statute would never run as the plaintiff could always renew a request for defendant to reconsider the final decision." *Id.* (citation and internal quotation marks omitted).

Similarly, plaintiff here hasn't alleged an ongoing series of actions that amount to a single violation of his constitutional rights.  Instead, plaintiff has alleged that the discrete act giving rise to plaintiff's constitutional claims based on a refusal to return his property occurred on August 19, 2019, when defendant Stacey Paige "restricted [plaintiff's] right to possess, own and use" certain property.  Doc. 1 at 13–16 (Compl. ¶¶ C.1.C.2.I.1.–11.).  And, plaintiff has alleged, the discrete act giving rise to plaintiff's constitutional claim based on an alleged mail restriction occurred on October 29, 2019, when "the facility restricted [plaintiff's] right to receive mail by refusing to hand out the mail or take the outgoing mail out."  Doc. 1 at 17 (Compl. ¶ C.1.C.2.I.12.).  Thus, a continuing violation theory can't save these time-barred claims.[7]

### D.  Plaintiff's Claims Based on Denials of Property Fail to State a Plausible Claim Under 42 U.S.C. § 1983.

Defendants next argue that plaintiff's claims based on defendants' refusal to return plaintiff's property and their denials of plaintiff's requests to purchase certain property—even if not barred by the statute of limitations—fail to state a plausible claim for relief under § 1983.  As already explained, plaintiff alleges that defendants refused to return certain property to him when he transferred from the Parsons State Hospital back to the Larned State Hospital on August 18, 2019.  Doc. 1 at 13–16 (Compl. ¶¶ C.1.C.2.I.1.–11.).  Also, plaintiff alleges that between

---

[7]     Plaintiff's only argument against the statute of limitations bar is an ongoing violations theory.  *See* Doc. 25-1 at 4–5, 8–9.  Plaintiff makes no other arguments to avoid the statute of limitations.  He never argues that the limitations period began to accrue on a different date.  Nor does he argue that any tolling doctrines apply to save his claims.  *See Eden v. Webb*, No. 21-3266-SAC, 2022 WL 621317, at *3 (D. Kan. Mar. 3, 2022) (explaining that plaintiff must shoulder "the burden of establishing a factual basis for tolling the statute of limitations" (citing *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980))), *aff'd*, No. 22-3064, 2022 WL 17576354 (10th Cir. Dec. 12, 2022).  Although plaintiff proceeds pro se and the court must construe his filings liberally, the court cannot "assume to role of advocate for the pro se litigant."  *Hall*, 935 F.2d at 1110.  Thus, the court declines to craft arguments for plaintiff to try to bring his claims within the applicable statute of limitations under § 1983.

November 3, 2019, and July 26, 2020, he submitted several resident requests asking to purchase various items from vendors.  Doc. 1 at 17–18 (Compl. ¶¶ C.1.C.2.I.13.–20.).  But staff denied all or part of plaintiff's requests to purchase these items.  *Id.*  Plaintiff asserts that the refusal to return certain property and the denials to purchase certain property violated "Due Process Procedure."  *Id.* at 13 (Compl. ¶ C.1.C.2.I.).

As our Circuit has explained, procedural due process "is required when a plaintiff is deprived of 'interests encompassed by the Fourteenth Amendment's protection of liberty and property.'"  *Castanon v. Cathey*, 976 F.3d 1136, 1140 (10th Cir. 2020) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972)).  When evaluating a procedural due process claim, courts ask two questions:  "(1) whether the defendants' actions deprived the plaintiffs of a property or liberty interest and (2) if so, whether the plaintiffs were afforded the appropriate level of process."  *Id.* (citation and internal quotation marks omitted).  "Property interests arise from 'existing rules and understandings that stem from an independent source such as state law.'"  *Id.* (quoting *Roth*, 408 U.S. at 577 (further citation omitted)).  "Liberty interests 'may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty' . . . or . . . from an expectation or interest created by state laws or policies.'"  *Id.* (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)).[8]

---

[8]      Plaintiff's Complaint just alleges a claim for "Due Process Procedure."  Doc. 1 at 13 (Compl. ¶ C.1.C.2.I.).  The court liberally construes plaintiff's allegation as a procedural due process claim.  But, to the extent one could construe plaintiff's Complaint liberally to assert a *substantive* due process claim—in addition to a *procedural* due process claim—a substantive due process claim also requires a plaintiff to allege deprivation of a property or liberty interest protected by the Constitution.  *See Roberts v. Winder*, 16 F.4th 1367, 1376 (10th Cir. 2021) ("'In order to present a claim of denial of "substantive" due process by a discharge for arbitrary or capricious reasons, a liberty or property interest must be present to which the protection of due process can attach.'" (quoting *Brenna v. S. Colo. State Coll.*, 589 F.2d 475, 476 (10th Cir. 1978)); *see also Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000) ("[T]to prevail on either a procedural or substantive due process claim, a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectible property interest.").

Here, defendants argue, plaintiff hasn't alleged that defendants deprived him of either a property or liberty interest sufficient to support a plausible due process claim.  To the extent plaintiff alleges that defendants denied him due process by failing to follow Larned State Hospital Policies 5.2 and 8.6, or somehow violated the KSPVA Bill of Rights codified at Kan. Stat. Ann. § 59-29a22,[9] he fails to state a claim under § 1983 because he "seeks relief for alleged violations of state statutes and prison regulations," and not violation of a right secured to him by the Constitution or laws of the United States.  *Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002) (first citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970); then citing *Hill v. Ibarra*, 954 F.2d 1516, 1520 (10th Cir. 1992)); *see also Chubb v. Keck*, No. 17-3220-SAC, 2020 WL 5653263, at *7 (D. Kan. Sept. 23, 2020) (holding that "no constitutional due process claim [was] implicated" by plaintiff's complaints that "defendants violated Kansas regulations and policies of" Larned State Hospital because "[d]enying an individual certain process, however mandatory under state law, does not itself deny liberty" under the U.S. Constitution (citing *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994)).

Also, to the extent plaintiff alleges that he has a right "to spend his money how he chooses[,]" Doc. 25-1 at 10, he fails to establish that defendants' denials of his requests to make certain purchases implicated a protected property or liberty interest.  To support his argument

---

[9]      Two provisions of the KSPVA Bill of Rights are relevant here.  *First*, Kan. Stat. Ann. § 59-29a22(b)(18) confers on persons committed under the KSVPA the statutory right "[t]o possess personal property in a reasonable amount, *as long as the property complies with state laws and facility rules and policies*, and be provided a reasonable amount of individual storage space pursuant to facility rules and policies." Kan. Stat. Ann. § 59-29a22(b)(18) (emphasis added).  *Second*, Kan. Stat. Ann. § 59-29a22(b)(22) confers on persons committed under the KSVPA the statutory right "[t]o spend such person's money as such person chooses with reasonable limitations, *except under the following circumstances*:  (A) *When restricted by facility rules and policies*; or (B) to the extent that authority over the money is held by another, including the parent of a minor, a court-appointed guardian of the person's estate or a representative payee." Kan. Stat. Ann. § 59-29a22(b)(22) (emphasis added).

that he has a constitutional right "to spend his money how he chooses[,]" plaintiff relies on a

2014 Kansas Court of Appeals case that held—based on an earlier and since-amended version of

Kan. Stat. Ann. § 59-29a22[10]—that persons committed under the KSVPA have a property

interest protected by the Fourteenth Amendment in the right to spend money under Kan. Stat.

Ann. § 59-29a22(b)(22).  Doc. 25-1 at 10 (citing *Pew v. Sullivan*, 329 P.3d 496, 501 (Kan. Ct.

App. 2014)).  Since then, though, another panel of the Kansas Court of Appeals has held that

Kan. Stat. Ann. § 59-29a22(b)(22) doesn't "implicate[ ] a fundamental constitutional right

sufficient to demonstrate a substantive due process claim" that could invalidate a Kansas SPTP

policy limiting vendors from whom an individual confined under the KSVPA may purchase

items.  *See Chubb v. Sullivan*, 330 P.3d 423, 436 (Kan. Ct. App. 2014).  Also, when reaching this

decision, the Kansas Court of Appeals noted that of "the few courts that have addressed this

issue, none have found *any* constitutional right at stake, let alone a fundamental one."  *See id.*

(first citing *Torres v. Cate*, No. C 12-6236 LHK (PR), 2013 WL 1097997, at *2 (N.D. Cal. Mar.

15, 2013) ("The Due Process Clause protects persons against deprivations of life, liberty, and

property without due process of law.  It does not guarantee prisoners a right to purchase property

from outside vendors, or to purchase property at all."); then citing *Ciempa v. Jones*, 745 F. Supp.

2d 1171, 1199 (N.D. Okla. 2010) ("Incarceration necessarily carries with it restrictions on a

prisoner's ability to purchase items of his or her choosing.") (further citations omitted)).

---

[10]        *Compare* Kan. Stat. Ann. § 59-29a22(b)(22) (2018) (conferring a statutory right "[t]o spend such
person's money as such person chooses with reasonable limitations, *except under the following
circumstances*:  (A) *When restricted by facility rules and policies*; or (B) to the extent that authority over
the money is held by another, including the parent of a minor, a court-appointed guardian of the person's
estate or a representative payee" (emphasis added)), *with* 2014 Kan. Sess. Laws 115 (conferring on
individuals confined under the KSVPA the "right to spend such patient's money as such patient chooses,
except to the extent that authority over the money is held by another, including the parent of a minor, a
court-appointed guardian of the patient's estate or a representative payee.").

Notwithstanding these state court decisions, the court here must apply the Tenth Circuit governing legal standard here to determine whether plaintiff has alleged a property or liberty interest sufficient to support his due process claims based on the facility's denial of his requests to purchase certain property and its failure to return certain property to him upon his transfer back to Larned State Hospital.  The Tenth Circuit has instructed district courts to review property and liberty interest claims by prisoners "under *Sandin*'s atypical-and-significant-deprivation analysis." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (further citations omitted)).  As our Circuit has explained, "a deprivation occasioned by prison conditions or a prison regulation does not reach a protected liberty interest and require procedural due process protection unless it imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin*, 515 U.S. at 484).

As our court has explained in another KSVPA confinement case, "a restrictive condition may be imposed without being considered punishment and violating the Fourteenth Amendment if it bear(s) some reasonable relation to the purpose for which persons are committed." *Keck*, 2020 WL 5653263, at *7 (citations and internal quotation marks omitted).  This standard requires plaintiff to "show the conditions he challenges are excessive in relation to the purposes served by his commitment under the KSVPA." *Id.* (citing *Seling v. Young*, 531 U.S. 250, 265 (2001)).  According to the Supreme Court, the "two main purposes of the KSVPA . . . are to incapacitate sexually dangerous predators and to provide treatment. *Id.* (citing *Kansas v. Hendricks*, 521 U.S. 346, 366 (1997)).  And here, defendants argue, the SPTP policies governing resident's possession of property advance a legitimate government interest.  Doc. 24 at 9.  The court agrees.

The policies restricting plaintiff's ability to possess or purchase certain items "involve typical security measures, which further legitimate government goals." *Keck*, 2020 WL 5653263, at *7. Plaintiff alleges no facts supporting a plausible finding or inference that defendants' denial of his requests to purchase property or their refusals to return certain property to him "were excessive in relation to the purposes of his confinement." *Id.* Also, plaintiff's Complaint doesn't allege facts showing that the alleged denial of his requests to purchase certain property or the alleged refusal to return certain property to him were an "atypical and significant hardship" on plaintiff "in relation to the ordinary incidents" experienced by those involuntary confined under the KSVPA. *See Sandin*, 515 U.S. at 484; *see also Keck*, 2020 WL 5653263, at *10 (holding that plaintiff hadn't "alleged facts showing that the property deprivations of which he complains were an atypical and significant hardship that subjected him to conditions significantly different from those ordinarily experienced by residents in the" Sexual Predator Treatment Program (internal quotation marks omitted)). Thus, plaintiff here fails to allege that defendants deprived him of a property or liberty interest sufficient to support a due process claim.

As our court has explained in the context of criminally-convicted prisoners, "it is well-established that prisons have broad discretion in regulating the entry of materials including money into prison."[11] *Lindsay v. Kan. Dep't of Corr.*, No. 10-3175-SAC, 2010 WL 4628190, at *6 (D. Kan. Nov. 8, 2010). Thus, courts repeatedly have held that denying or restricting a

---

[11] As already noted, the court recognizes that plaintiff "as a civil committee under the Kansas Sexually Violent Predator[ ] Act (KSVPA), is in a different position than a prisoner or a person who is civilly committed, albeit involuntarily, merely for mental health issues." *Keck*, 2020 WL 5653263, at *3. However, "'SVPs have been civilly committed subsequent to criminal convictions and have been adjudged to pose a danger to the health and safety of others.'" *Id.* (quoting *Hydrick v. Hunter*, 500 F.3d 978, 989–90 (9th Cir. 2007)). The court thus finds the case law governing restrictions on possessing property for criminally-convicted prisoners persuasive to the issues the court must decide here involving SPTP policies.

prisoner's right to possess certain property is a typical incident of incarceration and doesn't amount to a significant hardship on the prisoner. *See, e.g., Steffey*, 461 F.3d at 1222–23 (holding that prisoner had no constitutionally-protected property right to receive a contraband money order while in prison because "[p]rison officials . . . have a legitimate interest in controlling both the amount and source of funds received by inmates"); *see also Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999) (affirming Rule 12(b)(6) dismissal of prisoners' due process claims because prison policy restricting the type and quantity of personal property inmates may possess in their cells was not an atypical, significant hardship of prison life); *Lindsay*, 2010 WL 4628190, at *6 (holding that prison's withholding and returning of prisoner's Social Security check consistent with an established KDOC policy was not "an atypical and significant hardship that subjected him to conditions different from those ordinarily experienced by inmates serving their sentences in the customary fashion" because "the seizure and forfeiture of money is a typical incident of prison life, and is not a significant property interest deprivation" and also "the regulation itself is not an atypical type of restraint since it presumably is imposed upon the entire KDOC prison population" (internal quotation marks omitted)).  Likewise, here, plaintiff fails to allege facts supporting a plausible finding or inference that the Larned State Hospital staff's denials of plaintiff's requests to purchase certain property or their refusals to return certain property to plaintiff was an atypical and significant hardship on plaintiff in relation to those ordinarily experienced by those civilly committed under the KSVPA.

Also, even if plaintiff could establish that he had a protectible interest in certain property that defendants refused to return, his claim that defendant deprived him of his property without due process "is conclusory and contradicted by his own allegations[.]"  *Keck*, 2020 WL 5653263, at *11.  Plaintiff concedes that he invoked "post-deprivation remedies" in the form of

administrative complaints about the facility's refusal to return certain property to him.  *Id.*  As

our court has explained, neither "the negligent nor the unauthorized, intentional deprivation of

property by a state employee gives rise to a due process violation if state law provides an

adequate post-deprivation remedy."  *Id.* (first citing *Hudson v. Palmer*, 468 U.S. 517, 533

(1984); then citing *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981)).

For all these reasons, the court concludes that plaintiff has failed to allege that

defendants' denial of plaintiff's request to purchase certain property or their refusal to return

certain property to plaintiff deprived him of a constitutionally protected property or liberty

interest sufficient to support a plausible § 1983 claim for due process violations.

### E.   Plaintiff's Claims Based on Mail Handling Fail to State a Plausible Claim Under 42 U.S.C. § 1983.

Defendants next assert that plaintiff fails to state a plausible § 1983 claim based on any

alleged mishandling of his mail.  Plaintiff alleges that defendants restricted his right to receive

mail on three occasions:  October 29, 2019; February 23, 2021; and February 24, 2021.  Doc. 1

at 17–19 (Compl. ¶¶ C.1.C.2.I.12., C.1.C.2.I.22., C.1.C.2.I.23.).[12]  As already explained, the

---

[12]      Also, plaintiff alleges that he received a package on December 18, 2019, but defendant Marshal Newell refused to provide the package to plaintiff until December 20, 2019.  Doc. 1 at 17 (Compl. ¶ C.1.C.2.I.15.).  Plaintiff's Complaint fails to allege any facts plausibly showing that the two-day delay of his receipt of a package in December 2019 violated a constitutionally-protected property or liberty interest sufficient to support a § 1983 claim.  Plaintiff also alleges that he has received unopened mail from his therapists but never received "documentations stating it was being sent to the therapist" and the "property officer was not present when [he] opened the mail."  *Id.* at 22 (Compl. ¶ C.1.C.2.K.4.).  Again, plaintiff never alleges any facts plausibly showing that these delays in receiving his mail violated any constitutionally-protected property or liberty interest.

Indeed, the court recognizes that the KSVPA Bill of Rights confers on individuals confined under the KSVPA the right "[t]o send and receive mail with reasonable limitations" and provides that "mail is subject to physical examination and inspection for contraband, as defined by facility rules and policies."  Kan. Stat. Ann. § 59-29a22(b)(15).  Also, the statute provides that an "officer or employee of the facility at which the person is placed may delay delivery of the mail to the person for a reasonable period of time to verify whether the mail contains contraband, as defined by facility rules and policies, or whether the person named as the sender actually sent the mail."  *Id.* § 59-29a22(b)(15)(A).  Here, SPTP Policy 8.3 governs resident mail, explains that resident mail is subject to physical examination and x-ray scanning by

statute of limitations bars plaintiff's claim based on the alleged mail restriction occurring on October 29, 2019. *See supra* Part III.C. For the alleged restrictions in February 2021, plaintiff alleges that staff told him he had received mail that was "questionable" and that staff was sending the mail to his therapist. Doc. 1 at 18–19 (Compl. ¶¶ C.1.C.2.I.22.–23.). Several days later, plaintiff spoke with his therapist who reported that she never received the mail. *Id.* Plaintiff alleges that, to date, the facility can't locate the redirected mail. *Id.* Thus, plaintiff alleges, the facility has restricted his right to this mail permanently. *Id.* Plaintiff alleges that these two mail mishandling incidents violated his rights under the First and Fourteenth Amendments. Doc. 25-1 at 11.

For liability to attach under § 1983, plaintiff must allege "'a *deliberate* deprivation of constitutional rights by the defendant, and not on negligence.'" *Darr v. Town of Telluride, Colo.*, 495 F.3d 1243, 1256 (10th Cir. 2007) (quoting *Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir. 1995)); *see also Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992) ("The Supreme Court has made it clear that liability under § 1983 must be predicated upon a '*deliberate*' deprivation of constitutional rights by the defendant. It cannot be predicated upon negligence." (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (further citations omitted)). And more specifically, for a First Amendment claim based on mishandling of mail, plaintiff must allege facts supporting a plausible finding or inference that: "(i) his mail was mishandled; (ii) that the particular named defendant was responsible for that mishandling; (iii) that the mishandling was purposeful; and (iv) there is a plausible inference to be drawn that the

---

the facility to prevent contraband from entering the facility, and provides that staff may delay delivery of the mail for a reasonable time pending confirmation that the mail doesn't contain contraband. *See generally* Doc. 24-3. Thus, none of the alleged delays appear to have violated plaintiffs' state statutory rights. And, as already explained, none of plaintiff's allegations provide facts showing that these delays violated a property or liberty interest protected by the U.S. Constitution.

basis for that mishandling was not reasonably related to a legitimate penological interest." *Keck*, 2020 WL 5653263, at *9 (citing *Vreeland v. Griggs*, No. 12-cv-01921-PAB-KMT, 2015 WL 13236349, at *4 (D. Colo. Aug. 28, 2015)).

Here, plaintiff's Complaint alleges no facts supporting a plausible finding or inference that any defendant intentionally, deliberately, or purposefully mishandled his mail for either of the two alleged mail mishandling incidents in February 2021. Without alleging any facts showing a *deliberate* constitutional violation, plaintiff alleges no more than a negligence claim—if that—which fails to state a plausible claim under § 1983. *See, e.g.*, *Florence v. Booker*, 23 F. App'x 970, 972 (10th Cir. 2001) (holding no constitutional violation occurred based on "a single incident in which prison officials allegedly improperly opened legal mail" because plaintiff prisoner "offered no evidence tending to show that the incident was the product of improper motive" or that it "interfered with [his] right of access to the courts"); *McCoy v. Burris*, No. 18-3077-DDC-GEB, 2020 WL 5642324, at *18 (D. Kan. Sept. 22, 2020) (granting summary judgment against § 1983 claim because "the evidence show[ed]—at best—that defendants handled his legal mail negligently[,]" but plaintiff couldn't "predicate his § 1983 claims on negligence"); *Kleiner v. Cole*, No. 18-3147-SAC, 2018 WL 4914232, at *3 (D. Kan. Oct. 10, 2018) (holding that plaintiff failed to allege a plausible § 1983 claim based on mishandling of mail when the "allegations suggest[ed] negligence on the part of mailroom staff" but never "alleged improper motive or interference with access to the courts or counsel"). Thus, plaintiff fails to state a plausible claim for relief under § 1983 based on defendants' alleged mishandling of his mail on two isolated occasions.

### F.  Plaintiff's Claims Based on Denial of Pen Pal Request Fail to State a Plausible Claim Under 42 U.S.C. § 1983.

Defendants next contend that plaintiff fails to state a plausible § 1983 claim based on defendants' denial of his pen pal request.  Plaintiff alleges that he submitted a request to place an ad on loveaprisoner.com, but defendants denied his request.  Doc. 1 at 18 (Compl. ¶ C.1.C.2.I.21.); *see also* Doc. 24-1 (plaintiff's request).  Plaintiff asserts that defendants' denial of his request violated his constitutional due process rights under the Fourteenth Amendment.  Doc. 25-1 at 13.

To support his claim, plaintiff relies on a Kansas Court of Appeals opinion addressing a separate case that he had filed.  In that case, the Kansas appellate court held that plaintiff "has a fundamental liberty interest" in "having a pen pal."  *Merryfield v. Sullivan*, No. 111,204, 2015 WL 326652, at *4 (Kan. Ct. App. Jan. 16, 2015).  But, as defendants correctly assert, Larned State Hospital doesn't prohibit all pen pals.  Instead, it has a policy governing pen pal requests that requires the confined resident to secure approval of a putative pen pal.  Specifically, SPTP Policy 8.3 provides:

> Due to safety and security concerns, and for the protection of the community, SPTP residents are not allowed to post ads or messages, request or purchase pen pal lists, or cause any third party or outside person or process to act on their behalf to solicit correspondence or relationships, for the purpose of soliciting pen pals, correspondence, or relationships in any media available to the general public and minor children *without prior approval of the Treatment Team and the SPTP Program Director.*  This includes accessing or acquiring lists through newspapers, flyers, newsletters, magazines, or the internet.

Doc. 24-3 at 4 (SPTP Policy 8.3.I.C.4.) (emphasis added).

Consistent with this policy, on March 8, 2021, plaintiff submitted his request to place an ad on loveaprisoner.com.  Doc. 1 at 18 (Compl. ¶ C.1.C.2.I.21.); *see also* Doc. 24-1 (plaintiff's request).  And the next day, Larned State Hospital staff denied plaintiff's request by informing

him that "leadership reviewed his proposal" and the request "is denied at this time."  Doc. 24-1 at 1.

As already discussed, to state a plausible Fourteenth Amendment claim, plaintiff must allege facts supporting a plausible finding or inference that a "deprivation occasioned by prison conditions or a prison regulation . . . imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  *Steffey*, 461 F.3d at 1221 (quoting *Sandin*, 515 U.S. at 484).  Without such facts, the alleged deprivation does not "require procedural due process protection[.]"  *Id.*; *see also Keck*, 2020 WL 5653263, at *7 ("Conditions of confinement cannot give rise to a due process violation unless those conditions constitute atypical and significant hardship on a resident in relation to the ordinary incidents of confined life." (citations omitted)).

Here, plaintiff alleges no facts capable of supporting a finding or inference that defendants' policy governing pen pal requests or their decision denying his pen pal request "are excessive in relation to the purposes served by his commitment under the KSVPA."  *Keck*, 2020 WL 5653263, at *7 (citing *Seling*, 531 U.S. at 265).  As defendants ably point out, plaintiff "cannot, as a sexually violent predator, seriously assert that [he] has a property or liberty interest in having unfettered access to pen pals."  Doc. 24 at 12.  Instead, the policy requiring approval of a pen pal is one that involves safety and security measures, and thus furthers legitimate government goals.  *See Keck*, 2020 WL 5653263, at *7.  ("A secure facility has a legitimate interest in 'maintaining institutional security and preserving internal order and discipline,' which 'may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees', as well as SVPs.  Consequently, '[l]oss of freedom of choice

and privacy are inherent incidents of confinement in such a facility.'" (first quoting *Bell v. Wolfish*, 441 U.S. 520, 546 (1979); then quoting *Bell*, 441 U.S. at 537)).

Plaintiff fails to allege any facts that could support a plausible finding or inference that defendants' decision to deny his pen pal request was "excessive in relation to the purposes of his confinement." *Id.* Also, plaintiff's Complaint here doesn't allege facts showing that denying his pen pal request was an "atypical and significant hardship" on plaintiff "in relation to the ordinary incidents" experienced by those involuntary confined under the KSVPA. *See Sandin*, 515 U.S. at 484; *see also Keck*, 2020 WL 5653263, at *7. Thus, plaintiff fails to state a plausible constitutional violation sufficient to support a § 1983 claim based on defendants' denial of his request for a pen pal.

Also, to the extent plaintiff bases his pen pal request claim on an alleged failure to follow Larned State Hospital Policies or Kansas statutes, plaintiff fails to state a claim for relief under § 1983 because he "seeks relief for alleged violations of state statutes and prison regulations," and not violation of a right secured to him by the Constitution or laws of the United States. *See Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002) (citations omitted); *see also Keck*, 2020 WL 5653263, at *7 (holding that "no constitutional due process claim [was] implicated" by plaintiff's complaints that "defendants violated Kansas regulations and policies of" Larned State Hospital because "[d]enying an individual certain process, however mandatory under state law, does not itself deny liberty" under the U.S. Constitution (citing *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994))).

For all these reasons, plaintiff fails to state a plausible § 1983 claim based on defendants' denial of his request for a pen pal.

### G.  Plaintiff Fails to State a Plausible § 1983 Claim Based on a Lack of Access to the Courts.

Defendants next assert that plaintiff fails to allege a plausible § 1983 claim based on a lack of access to the courts.  Plaintiff alleges that defendants have "put a substantial limit" on his right of access to the courts "by declaring that Administrative Remedies must be exhausted." Doc. 1 at 8 (Compl. ¶ C.1.C.2.E.2.) (citing Kan. Stat. Ann. § 59-29a24).  Also, he asserts that he is "barred from seeking judicial relief" when "staff do not process the internal administrative remedy[.]"  *Id.* (Compl. ¶ C.1.C.2.E.5.).  However, plaintiff provides no factual allegations showing that defendants ever have failed to process his administrative complaints.  And, even if he did make such an allegation, it wouldn't support a constitutional claim based on a lack of access to the courts.

 To plead a plausible access to the courts claim, a plaintiff must allege "'actual injury.'" *Cosco*, 195 F.3d at 1224 (quoting *Lewis v. Casey*, 518 U.S. 343, 349 (1996)); *see also Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) (explaining that a constitutional lack of access to the court claims "must demonstrate actual injury from interference with his access to the courts—that is, that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement" (citing *Lewis*, 518 U.S. at 349)).

Here, plaintiff's Complaint fails to allege any facts showing that he has sustained any "actual injury" or that defendants "hindered [his] efforts to pursue a legal claim" because the Kansas statute requires administrative exhaustion.  *Cosco*, 195 F.3d at 1224.  Indeed, as the Kansas Court of Appeals has explained, "federal law preempts the exhaustion requirement of Kan. Stat. Ann. § 59-29a24.  *Burch v. Keck*, 444 P.3d 1000, 1005 (Kan. Ct. App. 2019) ("Congress intended for people, other than prisoners confined in jails, prisons, and other

correctional facilities, to be able to bring § 1983 claims without having to exhaust available administrative remedies."). And, our Circuit has explained, when "prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010). As a consequence, our court repeatedly has held that a prison official's failure to answer an inmate's administrative complaints doesn't violate his constitutional rights or prove an actual injury necessary to state a claim for denial of access to the courts. *See, e.g.*, *Martin v. Bellendir*, No. 23-3063-JWL, 2023 WL 2375119, at *5 (D. Kan. Mar. 6, 2023) (holding that plaintiff's § 1983 claims for lack of access to the courts based on "the grievance process and the failure to properly respond to grievances [were] subject to dismissal for failure to state a claim"); *Page v. Schnurr*, No. 20-3289-SAC, 2021 WL 3634687, at *6 (D. Kan. Aug. 17, 2021) (holding that "denial of the grievance form in no way prevented or hindered [inmate] from bringing suit in court," so "his access-to-the-courts claim indisputably lacks merit"); *Watson v. Evans*, No. 13-cv-3035-EFM, 2014 WL 7246800, at *7 (D. Kan. Dec. 17, 2014) (holding that plaintiff failed to state a denial of access to the courts claim because he did "not show that he suffered actual injury in bringing his claim" and "the fact that he filed this case and was able to file at least two administrative claims contradicts any argument he may make that this constitutional right was violated").[13] Similarly, here, plaintiff fails to allege any actual

---

[13] Also, plaintiff's Opposition to defendants' motion asserts that he doesn't have access to an adequate law library because he was unable to locate an unpublished Kansas federal court opinion that defendants cited in their motion. Doc. 25-1 at 2. In response, defendants provided plaintiff a copy of that unpublished decision with their Reply. *See* Doc. 30 at 8–17. Defendants mailed to plaintiff the Reply with the attached opinion on August 18, 2022. Doc. 30 at 7 (Certificate of Service). Thus, plaintiff has had access to the opinion for more than seven months. He hasn't asked the court to file any supplemental briefing on the opinion, or otherwise filed anything with the court challenging defendants' citation to the opinion. On these facts, plaintiff has failed to allege that he has sustained an injury sufficient to support a constitutional claim based on a lack of access to the courts. *See Lewis*, 518 U.S. at 349 (requiring "actual injury" to support constitutional claim based on lack of access to the courts); *see also Massengill v.*

injury based on the Kansas administrative exhaustion statute.  Thus, plaintiff has failed to state a plausible § 1983 claim based on a right of access to the courts.

### H.  Qualified Immunity

Last, defendants argue they deserve qualified immunity against claims asserted against them in their individual capacities.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.*  To establish a § 1983 claim against an individual defendant who asserts the defense of qualified immunity, plaintiff bears the burden to (1) come forward with facts that "make out a violation of a constitutional right[,]" and (2) demonstrate that "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)); *see also Margheim v. Buljko*, 855 F.3d 1077, 1087 (10th Cir. 2017) (explaining that

---

*Snyder*, No. 23-3062-JWL, 2023 WL 2475102, at *3 (D. Kan. Mar. 13, 2023) (holding that plaintiff failed to state a claim for lack of access to the court because he alleged no actual injury when he failed "to explain why [his] claims are non-frivolous, and fail[ed] to explain how those claims have been prejudiced by the limited access to law library materials" (citing *Counts v. Wyo. Dep't of Corr.*, 854 F. App'x 948, 952 (10th Cir. 2021))).

Also, to the extent plaintiff argues that *Keck* "has no merit" because it's an unpublished opinion and thus "should not be used as an unpublished decision to set [his] rights[,]" Doc. 25-1 at 2, the court disagrees.  The court recognizes that *Keck* is an unpublished Kansas federal district court opinion, and thus, it is not binding authority on the court now.  However, the opinion authored by the late Judge Crow is persuasive authority.  Finding the opinion persuasive and relevant to the issues presented here, this Order thus relies on *Keck* as persuasive authority.

"[o]nce an individual defendant asserts qualified immunity, the plaintiff carries a two-part burden" (citations and internal quotation marks omitted)).

Here, plaintiff has failed to shoulder his burden under the first prong of the qualified immunity test.  As discussed above, plaintiff has failed to allege facts supporting a plausible finding or inference that any defendant committed a constitutional violation against plaintiff. Thus, the court grants judgment on the pleadings against the individual capacity claims asserted against defendants under § 1983 because qualified immunity bars those claims.  The court thus dismisses the individual capacity claims with prejudice.  *See Clark v. Wilson*, 625 F.3d 686, 692 (10th Cir. 2010) (instructing district court to grant defendants' motion to dismiss based on qualified immunity against pro se plaintiff's § 1983 claims "with prejudice").

## IV.    Conclusion

For reasons explained, the court grants defendants' Motion for Judgment on the Pleadings.  Specifically, the court orders the following:

- The court grants judgment on the pleadings against plaintiff's § 1983 claims seeking money damages against defendant Howard in her official capacity because defendant Howard is immune from liability for such claims under the Eleventh Amendment.  The court thus dismisses without prejudice plaintiff's § 1983 claims seeking money damages against defendant Howard.[14]

- The court grants judgment on the pleadings against plaintiff's § 1983 claims against defendant Howard in her individual capacity because plaintiff fails to

---

[14]        The court dismisses these claims without prejudice because they are dismissed for lack of subject matter jurisdiction based on Eleventh Amendment immunity.  *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006); *see also Polaski v. Colo. Dep't of Transp.*, 198 F. App'x 684, 685–686 (10th Cir. 2006).

allege any personal participation by defendant Howard in the alleged constitutional violations.  Thus, the court dismisses plaintiff's § 1983 claims against defendant Howard in her individual capacity with prejudice.[15]

- The court holds that the two-year statute of limitations bars plaintiff's claims based on:  (a) defendants' alleged failure to return plaintiff's property to him when he transferred to the Larned State Hospital on August 18, 2019, and (b) an alleged restriction on plaintiff's mail that occurred on October 29, 2019.  Thus, the court grants judgment on the pleadings against these claims and dismisses them with prejudice.

- The court holds that plaintiff fails to state a plausible § 1983 claim based on defendants' refusal to return certain property to him, denials of his requests to purchase certain property, handling of plaintiff's mail, and denial of plaintiff's request for a pen pal.  The court thus dismisses these claims with prejudice.

- The court holds that plaintiff fails to state a plausible claim for access to the courts under § 1983, and thus dismisses these claims with prejudice.

- The court holds that qualified immunity shields defendants from liability for plaintiff's § 1983 claims asserted against them in their individual capacities.  The court thus dismisses plaintiff's § 1983 individual capacity claims with prejudice based on qualified immunity.

The court directs the Clerk of the Court to enter Judgment consistent with this Order.

---

[15]     The court dismisses these claims and the other remaining claims with prejudice because they are dismissals under Rule 12(c) for failing to state plausible claims.  *See Woodie v. Berkshire Hathaway Homestate Ins.*, 806 F. App'x 658, 663, 673 (10th Cir. 2020) (affirming district court's granting of motion for judgment on the pleadings and affirming Rule 12(c) dismissal of plaintiff's claims "with prejudice"); *see also Peña v. Greffet*, 110 F. Supp. 3d 1103, 1112 (D.N.M. 2015) ("Claims dismissed pursuant to a motion under rule 12(c) are dismissed with prejudice." (citation omitted)).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion for Judgment on the Pleadings (Doc. 23) is granted.  The court directs the Clerk of the Court to enter Judgment consistent with this Order and close the case because this Order concludes all claims before the court.

**IT IS SO ORDERED.**

**Dated this 29th day of March, 2023, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
